IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMANDA R. THOMAS, | : | Case No. 4:14-CV-00543 |
| | : | |
| Plaintiff, | : | |
| v. | : | (Judge Brann) |
| | : | |
| KEYSTONE REAL ESTATE | : | |
| GROUP LP, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**
March 31, 2015

Plaintiff Amanda Thomas brought the current action against her former employer alleging claims of gender discrimination, sexual harassment, and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and a sexual orientation discrimination claim under the State College, Centre County, Pennsylvania, Anti-Discrimination Ordinance 1967.   Before the Court is Defendant Keystone Real Estate Group, LP's Motion to Dismiss and Motion to Strike, and the Plaintiff's Motion to Disqualify Counsel.  The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1367.

The Parties have briefed the issues, the Court held a hearing, and these matters are ripe for resolution.  For the following reasoning, Defendant's Motion to Dismiss is granted, and Defendant's Motion to Strike is granted in part and denied in part.

1

## I.      BACKGROUND

Plaintiff Amanda Thomas was a female employee of Defendant Keystone

Real Estate Group, LP.  Stewart was involved in a private romantic relationship

with a female co-employee, Deborah Stewart.  Pl.'s Am. Compl. Second ¶¶ 25–27,

Apr. 30, 2014, ECF No. 8 [hereinafter Pl.'s Compl.].  Thomas alleges that she was

subjected to a sustained pattern of discriminatory verbal attacks for her sexual

orientation and failure to conform to gender stereotypes regarding her sexual

preferences.  See generally Pl.'s Compl.  Keystone's Chief Operating Officer Mary

Frantz Adams, Human Resource Manager Matthew Rager, and Maintenance

Coordinator Glen Miller, were the principal alleged perpetrators of this

discrimination, along with other Keystone employees.  See, e.g., Pl.'s Compl., ¶¶

83, 95, 118.  Thomas also alleges that over the course of her tenure, Rager, Miller,

and other Keystone employees made inappropriate and vulgar sexual advances

toward her, including exposed themselves and soliciting sexual favors from

Thomas.  See, e.g., Pl.'s Compl., ¶¶ 82–83.

Ultimately, Keystone terminated Thomas from her job.  She alleges that this

termination was based on both sexual orientation and gender discrimination.  The

Defendant seeks to dismiss both Thomas' gender discrimination claim under

federal law and state law, and sexual orientation discrimination claim under

municipal law.  The Court now analyses Defendant's arguments under the motion to dismiss standard.

## II.    DISCUSSION

### A.    <u>Motion to Dismiss</u>

#### 1.    <u>Motion to Dismiss Standard</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 662.  The standard seeks to eliminate those claims that do not present "enough" factual matter, assumed to be true, "to raise a reasonable expectation that discovery will reveal evidence" in support of the claims.  <u>Twombly</u>, 550 U.S. at 556.  Where a plaintiff fails to nudge his "claims across the line from conceivable to plausible, [his] complaint must be dismissed." <u>Id.</u>, 550 U.S. at 570.

To determine the adequacy of a complaint under this standard, a court should: (1) identify the elements of the claim(s); (2) review the complaint to strike conclusory allegations; and (3) consider the well-plead components of the

complaint and evaluate whether all elements previously identified are sufficiently alleged.  <u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011).  All well-pleaded facts must be accepted as true at this juncture.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210–11 (3d Cir. 2009).

### 2.   Gender Discrimination Claim

Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, provides that "[i]t shall be an unlawful employment practice . . . to discriminate against any individual . . . because of . . . sex."  42 U.S.C. § 2000e 2(a)(1).  To state a *prima facie* case of gender discrimination, a plaintiff must prove that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination.  <u>See, e.g.</u>, <u>Wooler v. Citizens Bank</u>, 274 Fed. App'x 177, 180 (3d Cir. 2008) (citing <u>Texas Dep't of Cmty. Affairs v. Burdline</u>, 450 U.S. 248, 253 (1981)).  The flashpoint of contention on this Motion is the fourth element: the Defendants argue that Thomas cannot demonstrate that her termination occurred under circumstances that give rise to an inference of unlawful discrimination because it is predicated on allegations of sexual orientation discrimination, which Title VII does not protect against.

4

The United States Court of Appeals for the Third Circuit has stated that, "[h]arassment on the basis of sexual orientation has no place in our society . . . . It is clear, however, that Title VII does not prohibit discrimination based on sexual orientation." Bibby v. Philadelphia Coca Cola Bottling Co., 260 F.3d 257, 261 (3d Cir. 2001). Congress has repeatedly rejected legislation that would have extended Title VII's reach to protect against sexual orientation discrimination. See, e.g., Employment Nondiscrimination Act of 1996, S.2056, 104th Cong. (1996); Employment Non Discrimination Act of 1995, H.R. 1863, 104th Cong. (1995)l Employment Non-Discrimination Act of 1994, H.R. 4636, 103d Cong. (1994).

Thomas may, however, state a claim for gender discrimination based on her failure to conform to gender stereotypes. This theory originated with the United States Supreme Court decision in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), where the Court reviewed the sex discrimination claim of a woman, Ann Hopkins, whose candidacy for partnership in the accounting firm was placed on hold amidst comments that she was "macho," "overcompensated for a being a woman," and could use "a course at charm school." Price Waterhouse, 490 U.S. at 235. Further, the partner who informed Hopkins why her candidacy was on hold advised her to "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." Id.

A plurality of the Court emphasized that "[w]e are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group." Id. at 251.  The Court continued that "in the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." Id. at 250.

Other courts have held that this reasoning is applicable to male employees abused because they are perceived as insufficiently masculine.  See, e.g., Kay v. Independence Blue Cross, No. Civ. A. 02-3157, 2003 WL 21197289 (E.D. Pa. 2003).  The United States Court of Appeals for the Seventh Circuit has found that "a man who is harassed because his voice is soft, his physique is slight, his hair is long, or because in some other respect he exhibits his masculinity in a way that does not meet his coworkers' idea of how men are to appear and behave, is harassed 'because of' his sex." Doe v. City of Belleville, 119 F.3d 563, 581 (7th Cir. 1997).

The United States Court of Appeals for the Third Circuit addressed the gender stereotyping theory in Bibby v. Philadelphia Coca Cola Bottling Co., 260 F.3d 257 (3d Cir. 2001).   The court explained that a plaintiff may demonstrate that harassment was discrimination based on sex in violation of Title VII by showing

that the "harasser was acting to punish the victim's noncompliance with gender
stereotypes." Id. at 264. The court held, however, that Bibby could not bring a
claim for gender stereotyping because:

> [H]e did not claim that he was harassed because he failed to comply
> with societal stereotypes of how men ought to appear or behave . . . .
> His claim was, pure and simple, that he was discriminated against
> because of his sexual orientation. No reasonable finder of fact could
> reach the conclusion that he was discriminated against because he was
> a man.

Id. at 264.

Further, the Third Circuit stated that plaintiffs need not "prove their
harassers were not motivated by anti-gay animus" to proceed under this theory. Id.
at 265. The Court continued: "[w]hatever the sexual orientation of a plaintiff . . .
that plaintiff is required to demonstrate that the harassment was directed at him or
her because of his or her sex. Once such a showing has been made, the sexual
orientation of the plaintiff is irrelevant." Id. Furthermore, "[o]nce it has been
shown that the harrassment was motivated by the victim's sex, it is no defense that
the harassment may have also been partially motivated by anti-gay or anti-lesbian
animus." Id.

"The line between discrimination based upon sexual orientation is difficult
to draw and . . . some of the complained of conduct [may fit] within both rubrics."
Kay v. Independence Blue Cross, 142 Fed. App'x 48, 51 (3d Cir. 2005) (Rendell,

7

J., concurring).  In the case before the Court, the pleadings are rife with facts that

demonstrate that Thomas was discriminated against because of her sexual

orientation, and that she repeatedly endured and deflected the harassing sexual

advances of male colleagues.

Facts indicating sexual orientation discrimination are present throughout the

complaint.  For example, Thomas alleges the following exchange in a meeting with

Chief Operating Officer Mary Adams:

> 53.  Thomas met with Adams at 8:30 AM on October 4, 2012.  Adams
> informed Thomas that she no longer [sic] allowed to work in the same
> office as Stewart and that Thomas was being immediately reassigned
> to Keystone's Downtown Office beginning at 9:00 AM that morning.
>
> 54.  Adams also expressed her disgust and disapproval of Thomas'
> relationship with Stewart, or any woman generally.  Adams said she
> was disappointed with Thomas for engaging being in a gay
> relationship and expressed her disapproval of same-sex relationships.
> No mention was made as to Plaintiff's work performance.
>
> 55.  Adams ended the meeting with Thomas by threatening to take
> further action against Thomas if Adams were to find out that Thomas
> and Steward continued to engage in any kind of relationship together.
>
> . . .
>
> 118.  Keystone's Chief Operating Officer, Adams, admitted on several
> occasions that her actions against Thomas were motivated because
> Thomas was a woman engaging in a personal-romantic relationship
> with another woman.

Pl.'s Compl., ¶¶ 53–55, 118.  The Complaint contains other similar allegations of

sexual orientation discrimination.

The Complaint is also riddled with allegations of vulgar sexual advances made toward Thomas by Keystone employees.  Thomas alleges a number of continually recurring instances where Rager and Miller exposed their genitals to her and solicited her sexual favors.  <u>See, e.g.</u>, Pl.'s Compl., ¶¶ 96–97.[1]  They even complimented her appearance, albeit with prurient intent.   For example, Plaintiff alleges that Rager commented that "her thighs were looking good in her jeans," among other such statements.  Pl.'s Compl., ¶ 95.

While disturbing, these facts do not support a claim of gender discrimination.  Thomas alleges evident sexual orientation discrimination and sexual harassment.  Thomas does not, however, allege any facts similar to those that courts have found give rise to gender discrimination.  There are no facts whatsoever demonstrating Thomas was discriminated for not appearing and acting within an antiquated feminine paradigm.

Unlike Hopkins, there were no allegations that Thomas was discriminated against for not appearing feminine or as if she required a course at charm school. <u>See</u> <u>Price Waterhouse</u>, 490 U.S. at 235.   In fact, Plaintiff alleges that Rager

---

[1] In several paragraphs in the Complaint, Plaintiff's counsel uses Stewart's name in places where context indicates he intends to refer to Plaintiff Thomas.

complimented her appearance during his sexual advances.  The fact that his advances were unrequited does not constitute gender discrimination, but, without more, are facts supporting a claim of sexual harassment.

Plaintiff attempts to further her claim by demonstrating that there were similarly situated male colleagues who were not treated the same when they engaged in heterosexual relationships within the office.  The entire focus of those allegations, however, is on their disparate treatment for actions based on their sexual orientation, not their gender.  See, e.g., Wooler, 274 Fed. App'x at 181 (affirming the district court's grant of summary judgment because the female plaintiff failed to provide any evidence that similarly situated males were treated differently).

While these facts appear sufficient to support her sexual harassment claim under Title VII (a claim which the Defendants do not challenge at this stage), they simply do not support a gender stereotyping claim under the same.  Accordingly, that claim is dismissed.  Because the claim is dismissed due to factual deficiencies rather than a legal bar, however, and because Defendant has not argued that amendment would be futile, the Plaintiff is granted leave to amend on this count. See, e.g. Azubuko v. Eastern Bank, 160 Fed. App'x 143, 145 (3d Cir. 2005) ("Amendment should be permitted unless it would be inequitable or futile.").

### 3.    Pennsylvania Human Relations Act Claim Dismissed

In Count III of her Complaint, Thomas alleges that Keystone violated

the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951, *et seq.*,

which provides protections against sexual harassment and hostile work

environments.  Keystone argues that claim should be dismissed because it is

time barred.

To bring a suit under the PHRA, the administrative complaint must be

filed within 180 days of the alleged act of discrimination.  43 Pa. C.S. §§

959(h), 962.  "If a plaintiff fails to file a timely complaint with the

[Pennsylvania Human Relations Commission], then he or she is precluded

from judicial remedies under the PHRA."  Woodson v. Scott Paper Co., 109

F.3d 913, 925 (3d Cir. 1997).  "The Pennsylvania courts have strictly

interpreted this requirement, and have repeatedly held that 'persons with

claims that are cognizable under the Human Relations Act must avail

themselves of the administrative process of the Commission or be barred

from the judicial remedies authorized in Section 12©) of the Act.'"  Id.

(quoting Vincent v. Fuller Co., 616 A.2d 969, 974 (1992)).

In this case, Thomas' alleged act of discrimination, her termination

from employment, occurred on October 8, 2012.  Thomas alleges that she

filed a charge of discrimination with the PHRC on April 26, 2013, more than 180 days after the alleged act of discrimination.  See Pl.'s Compl. Ex. 2, May 30, 2014, ECF No. 15-2.  Thomas makes no legal or equitable arguments to overcome this bar.  Accordingly, Court III of the Complaint is dismissed for failure to timely file with the PHRA.  See 43 P.S. § 959(h); Yeager v. UPMC Horizon, 698 F. Supp. 2d 523, 535 (W.D. Pa. 2010). Amendment of this claim would be futile.

4.    State College Ordinance 1967 Claim

Count IV of Plaintiff's Complaint is styled as "State College Ordinance 1967, Anti-Discrimination in Employment Provisions Discrimination Because of Sexual Orientation."  See Pl.'s Compl., ¶¶ 141–48.  Section 962.1 of the Pennsylvania Human Relations Act permits local governments to establish human relations commissions with "powers and duties similar" to those exercised by the Pennsylvania Human Relations Commission.  Pa. C.S. § 962.1(d).  The Borough of State College, Centre County, Pennsylvania, adopted Ordinance 1967 ("Anti-Discrimination Ordinance") pursuant to Section 962.1 of the PHRA, constituting sexual orientation discrimination a civil wrong within its jurisdiction.

Courts have determined that where a local ordinance is adopted

pursuant to the PHRA, the exhaustion of administrative remedies is required prior to filing a lawsuit.  See, e.g., Richards v. Foulke Assocs., Inc., 151 F. Supp. 2d 610, 614 (E.D. Pa. 2001).  Pursuant to Section 907 of the Anti-Discrimination Ordinance, a complaint must be received within 180 days of the alleged act of discrimination.  Ordinance 1967, § 907, ECF No. 26.  The Ordinance grants a person a private right of action in the Centre County Court of Common Pleas or any other court of competent jurisdiction: "1) upon receipt by the aggrieved Person(s) of notice that the Commission has dismissed the complaint; or 2) if not such notice is received, after one (1) year from the date of the filing of the complaint."  Id. § 908.  Further, the Ordinance provides that it "shall have no jurisdiction over matters which are the subject of pending or prior filings made by an aggrieved person before any state or federal court or agency of competent jurisdiction."  Id. § 909.

In the Complaint, Plaintiff failed to plead any facts relating to her filings pursuant to the Anti-Discrimination Ordinance.  Plaintiff has not established that she timely filed and exhausted her administrative remedies as required by the Ordinance.  Because Plaintiff asserts in her Brief that she can satisfy these requirements, however, leave to amend would not be futile.  Accordingly, this claim is dismissed without prejudice and Plaintiff is

granted leave to ament.

**B.**  **<u>Motion to Strike</u>**

The Defendant seeks to strike several pleadings from Plaintiff's Complaint arguing that they "malign and defame the management of Keystone by placing scandalous and inflammatory allegations in the Second Amended Complaint." Def.'s Br. 10, June 12, 2014, ECF No. 19. Federal Rule of Civil Procedure 12(f) permits courts to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are decided on the pleadings alone, and should not be granted unless the relevant insufficiency is "clearly apparent." <u>Cipollone v. Liggett Group, Inc.</u>, 789 F.2d 181, 188 (3d Cir. 1986).

While "courts possess considerable discretion in weighing Rule 12(f) motions, such motions are not favored," and Courts are reticent to grant them. <u>Miller v. Grp. Voyagers, Inc.</u>, 912 F. Supp. 164, 168 (E.D. Pa. 1996). One court noted that a motion should "be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." <u>Hanselman v. Olsen</u>, No. 4:05-CV-1834, 2006 WL 47655, *1 (M.D. Pa. Jan. 9, 2006) (McClure, J.) (internal quotations and citation

14

omitted).  Furthermore, Courts have identified possible prejudice to a party

as an important consideration in deciding motions to strike.  See, e.g.,

Miller, 912 F. Supp. at 168 (E.D. Pa. 1996).

In this case, Defendant seeks to strike paragraphs 30–36, 89 and 104

from the Plaintiff's Complaint.  The objectionable material in these

paragraphs falls into two distinct categories: i) scandalous and graphic

sexual depictions; and, ii) references to criminal drug activity.  The material

concerning sexual episodes is relevant and should not be stricken, because

they relate to the Plaintiff's harassment and hostile work environment

claims.

 The references to criminal drug activity, however, are immaterial,

prejudicial, and are therefore stricken from the Complaint.  None of the

Plaintiff's claims of discrimination depend or even relate to the existence of

the alleged criminal drug activity of Keystone employees, and the

allegations are deemed prejudicial.  Accordingly, paragraphs 89 and 104 are

stricken from the Complaint.

### C.    <u>Motion to Disqualify Counsel</u>

Plaintiff filed a Motion to Disqualify defense counsel from

representing Keystone as well as several Keystone employees, including

Matthew Rager, Mary Adams, Glen Miller, and Chief Executive Officer

Benjamin Heim.  Defense counsel responded to this Motion, as well as filed

her own Motion to Strike material in the Plaintiff's Motion.[2]  The Court

addresses these motions in turn.

### 1.  Motion to Disqualify Counsel

United States District Courts have the power to disqualify an attorney from

representing a party in a case.  See United States v. Miller, 624 F.2d 1198, 1201

(3d Cir. 1980).  This power derives from the court's "inherent authority to

supervise the professional conduct of attorneys appearing before it."  Id.

"Supervision of the professional conduct of attorneys practicing in a federal

court is a matter of federal law."  Miller, 624 F.2d at 1200.  Nevertheless, "[s]tate

precedents as to professional responsibility should be consulted when they are

compatible with federal law and policy and do not 'balkanize federal law.'"

Century Indem. Co. v. Congoleum Corp., 426 F.3d 675, 687 (3d Cir. 2005)

(internal citation omitted).  This Court has adopted the Rules of Professional

---

[2]  In their responsive brief, Defense counsel requested the Court to rule on potential discovery disputes not yet arisen.  Because no actual disputes exist to these issues at this juncture and they are not ripe issues before the Court, the Court neither can nor should issue an advisory opinion on this issue and declines to do so.

Conduct adopted by the Supreme Court of Pennsylvania.  Local Rule 83.23.2.[3]

Rule 1.7, titled Conflict of Interest: Current Clients, reads:

(a)  Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

> (1)  the representation of one client will be directly adverse to another client; or

> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b)  Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

---

[3] The full text of the Rule reads:

**LR 83.23.2 Adoption of Rules of Professional Conduct**.
    Acts or omissions by an attorney admitted to practice before this court, individually or in concert with any other person or persons, which violate the Rules of Professional Conduct adopted by this court, shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relaitionship.  The Rules of Professional Conduct adopted by this court are: (1) the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania, except Rule 3.10, as amended from time to time by that court, unless specifically expected in this court's rules; and (2) the Code of Professional Conduct enacted in the Middle District of Pennsylvania's Civil Justice Reform Act Plan.  See Appendix C.

LR 83.23.2.

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent.

Pennsylvania Rule of Professional Conduct 1.7.[4]

The party seeking to disqualify opposing counsel bears the burden of clearly showing that continued representation would be impermissible.  Commercial Credit Bus. Loans, Inc. v. Martin, 590 F. Supp. 328, 335 (E.D. Pa. 1984).  In this case, Plaintiff's counsel alleges that Defense counsels representation of both Keystone and Keystone employees (including Matthew Rager, Mary Adams, Glen Miller, and Chief Executive Officer Benjamin Heim) is not possible under this rule due to conflicts of interest.  Because several of the individuals represented have apologized for their poor behavior in the underlying events, Plaintiff's counsel

---

[4] Relatedly, Rule 1.13 states:

(a) A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.

. . .

(e) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents subject to the provisions of Rule 1.7.

PA. R. PROF'L CONDUCT 1.13.

argues that Defense counsel's representation of those apologizing employees is in

conflict with their defense of Keystone on the merits of this case.  Aside from

vague allegations as to why this representation would be inconsistent, however,

Plaintiff's counsel has not sufficiently established that a conflict of interest now

exists or may arise in the future.  At this early juncture in the litigation, it would be

premature to invoke the drastic remedy of disqualifying Defense counsel from

representation.

Furthermore, even if a conflict of interest does or will exist, Defense counsel

proffers that the current situation satisfies Rule 1.7(b).  The lawyer believes she

will be able to provide competent representation to each affected client, the

representation is not prohibited by law, the representation does not involve claims

against anyone also represented by the lawyer, and, importantly, each client has

provided their informed consent.  Accordingly, the motion is denied without

prejudice at this juncture.

2.    Motion to Strike

As previously articulated, Rule 12(f) provides courts the power to strike

"any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P.

12(f); Conklin v. Anthou, CIV. A. No. 1:10-CV-02501, 2011 WL 1303299, *1

(M.D. Pa. Apr. 5, 2011) (Kane, C.J.) (applying Rule 12(f) to motion).  Courts

enjoy wide discretion in these matters and are endowed with the inherent power to regulate the conduct of persons who appear before it.  "Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates.  This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers."  United States v. Shaffer Equip. Co., 11 F.3d 450, 461 (4th Cir. 1993).  Abusive motions and briefs "may be stricken *sua sponte* under the inherent powers of the court."  Phillips v. Carey, 638 F.2d 207, 208 (10th Cir. 1981) (citing FED. R. CIV. P. 12(f)).

"'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question."  Conklin, 2011 WL 1303299, at *1 (internal citation omitted).  "A 'scandalous' matter or pleading is one that casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court."  Id.

Plaintiff's counsel's Motion to Disqualify and the accompanying brief and exhibits fit squarely under the definitions of impertinent and scandalous matter. The prose in the documents is riddled with hyperbolic characterizations and profane language that has no relation whatsoever to the matter addressed in the motion and brief, and in the relief sought from this Court.  Furthermore, the

submissions of irrelevant scandalous material on the public record, including nude photographs of participants in this litigation, is an affront to the dignity of this Court.  The only available explanations for the inclusion of such irrelevant material are Plaintiff's counsels defamatory, incendiary motives or his plain incompetence. Neither are tolerated by this Court, now or in the future.  Accordingly, the Motion and its accompanying submissions are stricken from the record.

## III.    CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss is granted. Defendant's first Motion to Strike is granted in part and denied in part. Defendant's second Motion to Strike is granted.  Plaintiff's Motion to Disqualify Counsel is denied.


BY THE COURT:


s/Matthew W. Brann
Matthew W. Brann
United States District Judge